UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
ALVERN JAMES,                                                :
                                                             :
                              Plaintiff,                     :        13-cv-0019 (NSR)
          -against-                                          :
                                                             :        OPINION AND ORDER
CORRECT CARE SOLUTIONS, ARAMARK                              :
CORPORATION and WESTCHESTER                                  :
COUNTY,                                                      :
                                                             :
                              Defendants.                    :
-------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge

        Plaintiff Alvern James ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983

alleging that Defendants Correct Care Solutions, LLC ("CCS") and Aramark Correctional

Services, LLC[1] ("Aramark") violated his constitutional rights while he was confined at

Westchester County Jail ("WCJ").  Before this Court are the Motions to Dismiss of Defendant

Aramark and Defendant CCS pursuant to Federal Rule of Civil Procedure 12(b)(6).


**I.    Background**

        For purposes of this motion, this Court accepts as true the facts as stated in Plaintiff's

Second Amended Complaint.  Defendant CCS administers medical services at WCJ.  Def. CCS

Mem. 2-3.  Defendant Aramark is employed by Westchester County to provide food services at

WCJ.  Def. Aramark Mem. 3-4.  Plaintiff alleges that on October 28, 2012 at approximately 5

a.m., while he was working in the kitchen at WCJ, an Aramark employee told him to move a cart

---

[1] Aramark was erroneously sued under the name Aramark Corporation. Def. Aramark Mem. 1.

containing several stainless steel pots of hot grits.  Second Am. Compl. 3. While pushing the

cart, a wheel of the cart became jammed because of a loose "diamond plated manmade saddle"

in the floor and caused the container of hot grits to spill onto Plaintiff's body.  *Id*.  Some of the

hot grits spilled onto Plaintiff's exposed left forearm, which caused Plaintiff's skin to burn.  *Id.*

Plaintiff alleges that after the grits spilled, his burn went untreated for 5 or 6 hours.[2]  *Id* at 3-4.

    According to Plaintiff, he was not seen by medical personnel until 6 hours after the

accident, and he was never taken to the hospital.  Plaintiff received treatment for his burn at WCJ

from CCS employees.  Def. CCS Mem. 2.  Plaintiff alleges that in the weeks that followed the

accident, his bandages were not changed on 6 days: October 30 and 31, and November 1, 15, 16,

and 17.  He further claims that he was given inadequate medical attention, including being asked

to wait while a nurse practitioner ate her lunch before seeing Plaintiff and that medical personnel

failed to wear gloves when treating him.

    Plaintiff filed a grievance against CCS with the jail on October 31, 2012 in which he

claimed that 8 hours passed between his accident and the administration of treatment.  CCS Mot.

to Dismiss Ex. D.  The grievance includes a written statement signed by Plaintiff at 8:25 a.m. on

October 28, 2012 – less than 4 hours after the accident – in which he states that he had already

seen a nurse who "didn't do anything" but told him to "put ice on [the burn]."  *Id* at 9.  The

Grievance report provides that Plaintiff was taken to the nurse again at 8:15 a.m., where the

nurse practitioner applied silvedene cream (an antimicrobial cream), dressed Plaintiff's wound,

and ordered daily follow-up consultations until the burned healed.  Also included in the

---

[2] In Plaintiff's handwritten potion of the complaint, it appears that he states that five hours passed between injury
and treatment.  Second Am. Compl. 3.  However, on the typewritten page of the complaint, Plaintiff states that six
hours passed between injury and treatment. *Id* at 4.

grievance is an officer's report, which recounts Plaintiff as saying that the "injury occurred approx. 0500" and that Plaintiff was "advised to apply ice to affected area" after being escorted to the nurse by another officer.

Plaintiff alleges that a kitchen worker[3] informed him that Aramark was aware that the floor plate was loose prior to the accident. Plaintiff also states that he was not trained to move the equipment he handled, and that Aramark's equipment was improperly maintained. No internal grievance was filed by Plaintiff at the WCJ with respect to Aramark or the loose floor saddle.

## II. Legal Standard

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

---

[3] It is unclear from Plaintiff's complaint whether the named kitchen worker was an Aramark employee.

3

Ultimately, determining whether a complaint states a facially plausible claim upon which relief may be granted must be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York,* 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006)). *See also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally."). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

The materials that may be considered on a motion to dismiss are those "asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). One way a document may be deemed incorporated by reference is where the complaint "refers to" the document. *EQT Infrastructure Ltd. v. Smith*, 861

F. Supp. 2d 220, 224 n. 2 (S.D.N.Y. 2012).   Especially important to the inquiry of whether to consider a document outside the complaint is whether plaintiff has notice of the documents outside the complaint.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court ... could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").  Conversely, when the defendant includes documents that do not fall into these categories, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment . . . and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotation marks omitted). "In addition, because a pro se plaintiff's allegations must be construed liberally, it is appropriate for a court to consider factual allegations made in a pro se plaintiff's opposition memorandum, as long as the allegations are consistent with the complaint." *Brooks v. Jackson*, No. 11 Civ. 6627(JMF), 2013 WL 5339151, at *3 (S.D.N.Y. Sept. 23, 2013).

Here, Defendant CCS included Plaintiff's grievance report ("Grievance") as an exhibit to its motion to dismiss.  The Grievance was submitted to the warden of the WCJ as part of internal complaint procedure as required under the Prison Litigation Reform Act ("PLRA") before a plaintiff may bring certain actions to court.[4]  Plaintiff filed the grievance on October 31, 2012 and was denied on November 21, 2012.  CCS Mot. to Dismiss Ex. D.  The Grievance includes a Grievance Investigation Form, a Special Report, including officers' reports, and a Report of

---

[4] The relevant section of the PLRA, 42 U.S.C. § 1997e(a), provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Inmate Injury completed by Plaintiff.  *Id.*  In his complaint, Plaintiff specifically refers to the grievance by noting that the attempted administrative channels before filing this suit.  Although Plaintiff did not include the grievance as an exhibit, Plaintiff nonetheless incorporated the grievance by reference.[5]  Further, Plaintiff is clearly aware of the existence of the document and all of the information contained within given that he signed the decision to deny his grievance. Second Am. Compl. 6.  "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Therefore, the court will consider the grievance as incorporated by reference into Plaintiff's complaint in deciding the motion to dismiss.

Defendant Aramark also included documents with its motion to dismiss that are outside the complaint.  Namely, Aramark included the agreement between Aramark and Westchester County to provide food services to WCJ.  Aramark submitted a motion to dismiss to the court but asks, in the alternative, that the court translate its motion to a motion for summary judgment in the instance that the court considers documents outside the pleadings.  The court finds no reason to convert Aramark's motion to dismiss to a motion for summary judgment so that the agreement may be considered.  As the agreement is not incorporated by reference nor integral to Plaintiff's claim, it is inappropriate for consideration on a motion to dismiss.  *Cortec Indus.*, 949 F.2d at 48. Accordingly, the court will exclude consideration of the additional document included by Aramark and instead, consider only the facts in Plaintiff's complaint and Plaintiff's Grievance.

---

[5] The pro forma complaint provides that documents "related to the exhaustion of [] administrative remedies" may be attached as exhibits.  Second Am. Compl. 7.

III.    **Defendant CCS's Motion to Dismiss**

The Cruel and Unusual Punishments clause of the Eighth Amendment forms the basis of a convicted prisoner's claim that he or she is not being provided adequate medical care.[6] *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). To establish an Eighth Amendment claim arising from inadequate medical treatment, a prisoner must show that there was a "deliberate indifference to [a] serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Under this standard, prison officials are required to ensure that prisoners receive adequate medical attention. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, but "not every lapse in medical care is a constitutional wrong." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). To determine if the prisoner's Eighth Amendment rights were violated, courts apply a test with a subjective and an objective component. *Id*. The test requires plaintiff to show first, that the alleged deprivation of medical care was "sufficiently serious [and] result[ed] in the denial of the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted), and second, that the prison official acted with a sufficiently culpable state of mind. *Salahuddin*, 467 F.3d at 280.

a.   **Objective Test**

The first requirement for a showing of an Eighth Amendment violation is that there was a deprivation of care that was sufficiently serious, which is determined by an objective test with

---

[6] Plaintiff does not specify in his complaint whether he was a pre-trial detainee or a convicted and sentenced prisoner at the time of the alleged conduct. The result, however, is the same. "Although a deliberate indifference claim must be brought under different constitutional provisions depending on the Plaintiff's status—the Eighth Amendment for convicted prisoners and the Fourteenth Amendment for pre-trial detainees—the standard for evaluating claims of deliberate indifference is the same under both amendments." *Thomas v. Westchester County*, No. 12–CV–6718 (CS), 2013 WL 3357171, at *3 n.9 (S.D.N.Y. July 3, 2013); *see also Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir. 2009).

two prongs.  The first prong is whether the prisoner was actually denied adequate medical care. *Salahuddin*, 467 F.3d at 279.  "[T]he prison official's duty is only to provide reasonable care," *id*, and thus, "prison officials who act reasonably [when responding to an inmate] cannot be found liable under the Cruel and Unusual Punishments Clause," *Farmer*, 511 U.S. at 845. Conversely, liability may result where prison officials fail "to take reasonable measures" in response to a medical need.  *Id* at 847.

The second prong of the objective test is whether the alleged deprivation of medical care was sufficiently serious.  *Salahuddin*, 467 F.3d at 279.  "[T]he prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (internal quotation marks omitted); *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("The standard for Eighth Amendment violations contemplates a condition of urgency that may result in degeneration or extreme pain.") (internal quotation marks omitted).  Relevant factors regarding the seriousness of the condition include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright,* 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998).  The inquiry is "fact-specific" and "must be tailored to the specific circumstances of each case," *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003), meaning that "[i]n cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower." *Salahuddin*, 467 F.3d at 280.  For instance, where a prisoner claims that the care provided was adequate but that there was a delay or interruption in administration, courts may

8

"focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone."  *Smith*, 316 F.3d at 185.

Plaintiff alleges that he was denied treatment for five or six hours after the initial incident[7] and that he was denied proper follow-up treatment by not having his bandages properly changed or his wound properly cleaned.  The first allegation is based on the delay in treatment, which requires focusing on the delay rather than the underlying condition alone.

Plaintiff claims that the prison officials were notified immediately after the accident of Plaintiff's injury, but did not adequately respond for several hours.  However, by Plaintiff's own admission, he was seen by a nurse shortly after the accident and when it became clear a few hours later that the injury required further treatment, Plaintiff's burn was treated further.  Even allowing for a few hours of lapse, "[c]ourts in this Circuit have repeatedly held that pain experienced for even longer than two to three hours does not rise to the level of an Eighth Amendment violation." *Mitchell v. New York City Dept. of Corrections*, No. 10 CV 0292(RJH), 2011 WL 503087, at *4 (S.D.N.Y. Feb. 14, 2011) (listing cases where up to 8 to 9 hours of lapse between injury and treatment was not considered serious); *Heredia v. Doe*, 473 F. Supp. 2d 462, 464 (S.D.N.Y. 2007) (adopting recommendation to dismiss claim where jail staff did not send

---

[7] In his complaint, Plaintiff alleges that five and six hours passed between his injury and treatment. Second Am. Compl. 3, 4.  In his grievance, Plaintiff alleges that the time lapse was 8 hours.  Grievance 3.  In the grievance, however, plaintiff signed a "Statement Form" on 8:25 a.m. on October 28, 2012, the date of the accident.  In his own words, Plaintiff writes that the accident occurred "around 5 am" and that he was taken to the nurse who told him "to put ice on it."  CCS Mot. to Dismiss Ex. D, at 11 (non-paginated exhibit).  Given that he signed this statement at 8:25 a.m. and stated himself that he had already been seen by the nurse, it is impossible that 5 hours passed between his injury and treatment.  However, reading the complaint liberally, it may be the case that Plaintiff is referring to the fact that 5 or 6 hours passed between the accident and when he returned to the nurse for the second time, after a blister had formed on his arm.  At the second visit, the nurse wrapped Plaintiff's wound and administered antimicrobial cream.  For purposes of this motion, the court will take Plaintiff's claim to refer to the second visit after his burn formed a blister.

plaintiff to hospital after slipping and falling on his back until the day after the fall); *Rodriguez v. Mercado*, No. 00–CV–8588, 2002 WL 1997885, at *9 (S.D.N.Y. Aug. 28, 2002) (dismissing claim where plaintiff was seen within eight or nine hours of the incident by a nurse who prescribed him Tylenol).

The injury Plaintiff sustained encompassed an area "about 8 inches by 6 inches" and caused him extreme pain.  Second Am. Compl. 3.  The burn was characterized as "third-degree" in the Grievance, although Plaintiff does not allege the severity of his burn in the Complaint. Although this court determined that second degree burns sustained from spilling hot coffee and that resulted in blistering the size of "a couple of fingers" was not serious, *Pressley v. Green*, No. 02 Civ. 5261(NRB), 2004 WL 2978279 (S.D.N.Y. Dec. 21, 2004).  However, the severity and size of the burn is more significant in this case.  While there was no threat of death or degeneration from Plaintiff's injury, Plaintiff did allege that his wound caused him extreme pain, as a serious burn likely would.

Further, "the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Smith,* 316 F.3d at 186; *accord Odom v. Kerns,* No. 99–CV–10668, 2008 WL 2463890, at *7 (S.D.N.Y. June 18, 2008) (cuts and open wounds that eventually became infected could be serious medical needs).  If Plaintiff's bandages were not changed on six different occasions in the weeks following his burn as alleged, such failure might result in infection.  In fact, in his Grievance, Plaintiff states that his burn was "infested with bacteria from puss discharge not being cleaned with disinfectans [sic] and wrapping has a foul odor." Grievance at 4.  Therefore, reading the complaint in the light most

favorable to the *pro se* Plaintiff, there is a plausible allegation of a serious injury in Plaintiff's Complaint.

### i. Subjective Test

The second requirement for an Eighth Amendment violation is a subjective test that asks whether the accused Eighth Amendment violator acted with a "sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280.   In Eighth Amendment prison-conditions cases, a sufficiently culpable state of mind is "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citation omitted).   A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety."   *Id* at 837.   "This 'deliberate indifference' element is equivalent to the familiar standard of 'recklessness' as used in criminal law." *Phelps v. Kapnolas*, 308 F.3d 180, 186 (2d Cir. 2002) (quoting *Farmer*, 511 U.S. at 839–40).   In order to meet this standard, the "charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Farmer*, 511 U.S. at 836–37.   Mere negligence on the part of a prison official is not sufficient to constitute deliberate indifference.   *Id* at 835–37.

Even if Plaintiff's burn is a serious medical condition, Plaintiff must also show that "defendants acted or failed to act while actually aware of a substantial risk that serious inmate harm would result." *Farid v. Ellen*, 593 F.3d 233, 248 (2d Cir. 2010) (alterations and internal quotation marks omitted).   In examining the facts, even in the light most favorable to the Plaintiff, there is no indication that defendant CCS acted with the requisite state of mind.   None of CCS's activities could be deemed to reach the level of criminal recklessness.   First, the Grievance makes clear that the Plaintiff saw a nurse soon after his accident, and subsequently

followed up with a nurse a few hours later.  "The bare fact of delay suggests at most negligence, and the Supreme Court in *Estelle* cautioned that mere negligence is insufficient to state a claim under §1983."  *Linden v. Westchester County*, No. 93 Civ. 8373 (MBM), 1995 WL 686742, at *3 (S.D.N.Y. 1995).  Even if Plaintiff's wounds were not changed on six occasions over the course of three weeks as alleged, there is nothing more in Plaintiff's complaint that makes a plausible claim that defendants knew and consciously disregarded an excessive risk to Plaintiff's health and safety.  His burn was bandaged within hours of the accident and treated thereafter.

At best, Plaintiff makes out a claim for negligence, which has long been held to be insufficient to sustain a claim under the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in ... treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance*, 143 F.3d at 703 ("negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm.") (alteration and internal quotation marks omitted).  "While not changing [] bandages daily may potentially amount to negligence," occasional failure to change bandages, without the accompanying state of mind, is not sufficient to state a claim.  *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171, at *5 (S.D.N.Y. July 3, 2013).

12

Plaintiff also argues that he should have been taken to the hospital to determine the severity of his burns.  Failure to seek outside medical advice alone is not sufficient to allege deliberate indifference because "mere disagreement over the proper treatment does not create a constitutional claim."  *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).  "The prisoner's right is to medical care- not the type or scope of medical care which he personally desires." *Gonzales v. Wright*, 665 F. Supp. 2d 334, 337 (S.D.N.Y. 2009) (quoting *U.S. ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867 (2d Cir. 1970)).  CCS employees did not believe that Plaintiff's injury warranted a hospital visit, and even if Plaintiff disagreed, such disaccord is not actionable. Thus, Plaintiff has not plausibly alleged that CCS had the requisite state of mind in order to state a claim for deliberate indifference.

For the reasons stated above, Defendant CCS's motion to dismiss is granted with respect to Plaintiff's Eighth Amendment deliberate indifference claim.

**b.  Defendant Aramark's Motion to Dismiss**

Plaintiff also brings this action against Aramark, a food service provider for the WCJ, under 42 U.S.C. §1983 for "failure to train, no proper protective equipment, old, rundown and not maintained equipment."  Second Am. Compl. 5.  Plaintiff was working in the kitchen under the instruction of Aramark employees at the time the accident occurred.  Plaintiff's claims are that Aramark, through its employees, did not fix a dangerous condition that caused an accident, and that Plaintiff was not properly trained to handle the cart he was asked to push.  Reading the complaint liberally, as afforded a *pro se* plaintiff, it seems that Plaintiff's claim is that Aramark failed to protect Plaintiff from a risk of harm in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  With a failure to protect claim, plaintiff must show that

13

he is "incarcerated under conditions posing a substantial risk of harm," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and that prison officials "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Plaintiff alleges that Aramark, though its employees, was aware of the loose diamond plate in the floor that caused the accident in which he was injured and that Aramark did nothing to remedy the situation. However, the court need not reach the issue of whether Plaintiff properly alleges notice and failure to protect because Aramark is not subject to liability under 42 U.S.C. §1983 due to the fact that it is not a state actor.

       i. **State Actor**

Aramark, a private defendant, may only be held liable under §1983 if it acted "under the color" of state law.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. §1983.  A private defendant may be considered a state actor through the application of one of three tests: the close nexus test, the state compulsion test, and the public function test.

To find state action under the close nexus test, "there [must be] a sufficiently close nexus between the State and the challenged action of the [] entity so that the action of the latter may be

fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (internal citation omitted).  Being regulated by the state alone does not elevate the status of a non-state actor to that of a state actor.  *Id.*  This test ensures that constitutional standards apply only to action for which the state is "*responsible*," so that the entity may fairly be treated as the state. *Id.*

The state compulsion test requires a showing that the state actor has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

To show state action under the public function test, the action must be "so clearly governmental in nature as to amount to a public function."  *Jordan v. Federal Bureau of Prisons*, No. 09 Civ. 8561(ALC), 2013 WL 1143617, at *12 (S.D.N.Y. Mar. 19, 2013). "The public function test as applied is quite stringent and under the doctrine an extraordinarily low number of functions have been held to be public." *Doe v. Harrison*, 254 F. Supp. 2d 338, 343 (S.D.N.Y. 2003) (quoting *Ruhlmann v. Ulster County Dept. of Social Services*, 234 F. Supp. 2d 140, 166 (N.D.N.Y. 2002)) (internal quotation marks omitted).  "Acts of prison employees will [] almost certainly be considered acts of the State whatever the terms of their employment."  *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004).  However, the Supreme Court held that the negligent acts of a private physician working under contract to provide medical services to prison inmates was considered state action.  *West v. Atkins*, 487 U.S. 42, 54-57 (1988). Further, "[t]he mere fact that a private actor is paid by state funds, or is hired by a state actor, is insufficient to establish state action." *Emanuel v. Griffin*, No. 13 Civ. 1806(JMF), 2013 WL 5477505, at *5 (S.D.N.Y. Oct. 2, 2013).

In addition, a private employer is not liable under §1983 for injury committed by its employees unless such action is taken in furtherance of an official policy or custom.[8] *Monell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658, 691 (1978) ("it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *see also Mora v. Camden County*, Civil No. 09–4183 (JBS), 2010 WL 2560680, at *10 (D.N.J. June 21, 2010) ("in order for an entity such as Aramark to be liable under § 1983, Plaintiffs must show that the entity had a relevant policy or custom, and that the policy caused the constitutional violation.").  A policy is made "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (plurality opinion).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997).

There is nothing in the complaint that suggests that Aramark should be treated as a state actor.  Further, other than conclusory statements that Aramark was apprised of the condition of the floor, Plaintiff makes no allegations that there was systematic failure on Aramark's part to fix potential hazards in the kitchen area that could harm prisoners in violation of the Eighth Amendment.  There are no facts to make a plausible claim that Aramark's failure to prevent this accident was due, even in part, to the furtherance of a policy or custom.

---

[8] "Although *Monell* dealt with municipal employers, its rationale has been extended to private businesses." *Rojas v. Alexander's Dept. Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990).

## IV.  State Law Claims

In construing the complaint liberally, Plaintiff's complaint could be read as asserting claims under state law for negligence and/or medical malpractice.  Pursuant to 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all federal claims over which it had original jurisdiction.  Having dismissed all of Plaintiff's federal claims under Rule 12(b)(6), it would be inappropriate to adjudicate his state law claims, and thus the Court declines to exercise supplemental jurisdiction over any purported state law claims.

## V.   Conclusion

For the foregoing reasons, Defendant Aramark's Motion to Dismiss and Defendants CCS's Motions to Dismiss are GRANTED.  The Clerk is respectfully directed to terminate the pending Motions, (Doc. 50 & Doc. 44), and terminate CCS and Aramark from the case.

Dated: October 2_, 2013                              SO ORDERED:

   White Plains, New York

_____
                                        NELSON S. ROMÁN
                                        United States District Judge